**Angel P. GARCIA–CABRERA, Plaintiffs,**

v.

**William COHEN, et al., Defendants.**

**Civil Action No. 98–A–1114–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 2, 2000.

---

David George Flack, Montgomery, AL, for Plaintiff.

R. Randolph Neeley, Redding Pitt, U.S. Attorney, U.S. Attorney's Office, Montgomery, AL, for Defendants.

## *MEMORANDUM OPINION*

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This cause is before the court on a Motion to Dismiss Or In The Alternative For Summary Judgment (doc. # 21) filed by the Defendants on November 15, 1999.

Garcia–Cabrera brought this action against the Secretary of the United States Department of Defense, William Cohen, (the "Secretary") and four of his supervisors at the Defense Commissary Agency ("DeCA"), the division of the Department of Defense that employed Garcia–Cabrera, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and rights guaranteed by the First Amendment to the United States Constitution.

For the reasons discussed below, the Defendants Motion for Summary Judgment is due to be GRANTED.

### II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates*, 887 F.2d 1493 (11th Cir.1989). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

The submissions, when viewed in a light most favorable to Garcia–Cabrera, establish the following undisputed facts:

### I. *Garcia–Cabrera's Termination*

Garcia–Cabrera was appointed to a civil service position termed a "career-conditional" appointment. The Office of Personnel Management ("OPM") Regulations provide general rules applicable to all career-conditional employees. Generally, a career-conditional employee may become a "career" employee upon the completion of a "service requirement" of usually three years. 5 C.F.R. § 315.201.[1] Prior to the completion of the first year of a career-conditional employee's service period—the "probationary period"—the employee may be dismissed "if he fails to demonstrate fully his qualifications for continued employment." 5 C.F.R. § 315.803. During this probationary period, a career-conditional employee is accorded limited procedural rights,[2] and may seek review of a dismissal only on limited grounds.[3]

---

1. As with most civil service requirement, there are exceptions to this requirement. *See* 5 C.F.R. § 315.201(c).

2. A probationer terminated "because of work performance or conduct during [the probationary] period" is entitled only to notice in writing "consisting of the agency's conclusions as to the inadequacies of his performance or conduct." 5 C.F.R. § 315.804.

3. An employee terminated under sections 315.804 or 315.805 may seek review of the agency's decision with the Merit Systems Protection Board (the "Board" or "MSPB"). The Board's review is "confined to the issues stated in paragraphs (b) and (c) below":

   (b) On discrimination. An employee may appeal under this paragraph a termination not required by statute which he or she alleges was based on partisan political reasons or marital status.
   (c) On improper procedure. A probationer whose termination is subject to § 315.805 may appeal on the ground that his termination was not effected in accordance with the procedural requirements of that section. 5 C.F.R. § 315.806.

Garcia–Cabrera received his career-conditional appointment as an Accounting Technician for the DeCA at Maxwell Air Force Base ("Maxwell"). The DeCA is the division of the Department of Defense that is charged with the operation and management of the government's commissaries, the retail stores that sell groceries and household supplies "to members of the Military Services, their families, and other authorized patrons...." *Department of Defense Directive,* 5105.55 at ¶ (C)(1)(a). The DeCA maintains and operates a commissary at Maxwell Air Force Base and at Gunter Military Base in Montgomery, Alabama.

Garcia–Cabrera's career-conditional appointment was contingent on the successful completion of a one year probationary period as mandated by 5 C.F.R. § 315.801 during which Garcia–Cabrera was required to demonstrate his fitness for permanent employment. *See* 5 C.F.R. § 315.803. The terms of his appointment required that he demonstrate to the satisfaction of the DeCA that he could satisfy five "critical" conditions (termed "performance elements") of his employment. *See Def.Ex. 5, (Civilian Performance Plan ).*[4] One of these "critical" conditions was described as follows:

> Handles all requests from Headquarters, Region, Zone Managers, Store Personnel and ACS supervisors and coworkers in a courteous and professional manner. Demonstrates an ability to work cooperatively with others, by reducing the high potential for stress to a bare minimum. No more than 2 substantiated instances of un-professionalism per year will be considered acceptable.

*See Def.Ex. 5 at 2.*[5]

On June 13, 1997, Daleen Hulsey ("Hulsey"), who was the Acting Chief of the Accounts Controls Section and Garcia–Cabrera's supervisor during the relevant time period, handed Garcia–Cabrera a letter ("Hulsey letter"), notifying him of his removal. Hulsey explained in her letter to Garcia–Cabrera that he was being terminated because he had failed to conduct himself in a courteous and professional manner as was required by his job description. *See generally, Def.Ex. 8.* Hulsey cited two specific instances of such conduct:

> (1) On 11 June 1997, you [i.e., Garcia–Cabrera] were being counseled by the acting supervisor, Ms. Helen Spangler, regarding your conduct when you became disrespectful, rude, loud, and discourteous towards her. You refused to listen to her, stated that if she wanted to talk to you to talk to your attorney, left the meeting and slammed the door behind you. You have been previously counseled regarding the importance of customer service. This type of behavior is unacceptable, especially towards your lead who was also functioning as your supervisor. (The "Spangler Incident").
> (2) On 12 June 1997, I received a complaint from the Maxwell Commissary Officer, Ms. Barbara Sannino, regarding your rude, uncooperative attitude and discourteous conduct towards employees of the Management Support Center (MSC) at the Maxwell AFB Commissary and Gunter Annex Commissary. Employees of these serviced commissaries have reported numerous complaints concerning your negative attitude. All employees have been directed to provide respectful, professional, and cooperative service to all our customers. (The "Sannino Incident").

*See Def.Ex. 8* (Hulsey Letter) at 1.

Garcia–Cabrera was immediately placed on administrative leave, and his termination became effective on June 21, 1997.

---

Unless the probationer terminated under 5 C.F.R. § 315.804 appeals on the basis of one these subparagraphs, he or she has not right of appeal to the MSPB.

**4.** These critical conditions are part of the Office of Personnel Management's standard evaluation procedure. *See Federal Personnel Manual,* chs. 430, 432.

**5.** It is undisputed that Garcia–Cabrera was aware of these conditions of his employment.

Garcia–Cabrera sought review of the agency decision from the MSPB. He also complained to the Equal Employment Opportunity (EEO) Officer at Maxwell that the decision was based on illegal employment discrimination, and filed a formal Complaint of Discrimination in the Federal Government.

## II. *The MSPB Appeal*

■ As noted above, probationary employees in the federal civil service are given limited procedural rights. Generally, an employee serving a probationary period is not an "employee" under 5 U.S.C. § 7511(a)(1)(A) (defining "employee" as an "individual in the competitive service ... who is not serving a probationary or trial period under an initial appointment"). The MSPB, therefore, has no jurisdiction over such an employee's appeal from termination during the probationary period. *See, e.g., Mastriano v. Federal Aviation Admin.,* 714 F.2d 1152 (Fed.Cir.1983). The Office of Personnel Management regulations provide a narrow exception to the non-reviewability of termination during the probationary period. The MSPB may entertain such an appeal where the employee alleges the termination "was based on partisan political reasons or marital status." 5 C.F.R. § 315.806(b). In his appeal to the MSPB, Garcia–Cabrera alleged that his removal "was taken without substantial evidence or statements...." and was in retaliation for his having exercised his First Amendment Rights. *Def.Ex. 14* at 2. (MSPB Appeal). These allegations, how-

ever, do not fit within the narrow exceptions to the non-reviewability of agency decisions regarding probationary employees. Thus, Garcia–Cabrera had no right of review before the MSPB.[6] *See Def.Ex. 17.*

## III. *The EEO Complaint*

Garcia–Cabrera also filed a charge of discrimination with the EEO Officer, Sharon K. Wallis ("Wallis"), at Maxwell. In his formal Complaint, Garcia–Cabrera alleged that he had been discriminated against because of his race, his color, his national origin, and he also alleged sexual harassment. He listed eight instances in which he had been discriminated against by the DeCA and its employees. The EEO investigator determined that there was no merit to Garcia–Cabrera's allegations.

The court now turns to the merits of those claims.

## IV. *DISCUSSION*

Garcia–Cabrera has brought three claims in his Complaint. In Count I, Garcia–Cabrera alleges that he was discriminated against on the basis of his race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Complaint* at 12. In Count II, Garcia–Cabrera alleges that the Defendants retaliated against him in violation section 704(a) of the Civil Rights Act of 1964 because he engaged in protected employment activity. In Count III, Garcia–Cabrera alleges a *Bivens* violation of his First Amendment rights.[7]

6. The appeal was dismissed as untimely. *See Def.Ex. 17.*

7. At various times, Garcia–Cabrera has alleged other employment violations in connection with his termination. For example, before the EEO officer at Maxwell, Garcia–Cabrera alleged that, while he was employed by the DeCA, he had been the subject of disparate treatment because of his race, color, sex, and national origin in that: (1) he received a heavier workload; (2) he was reprimanded because he would not join in office gossip or rumors; (3) he was ordered to change certain accounting figures over his

objection; and (4) he was incorrectly classified as a probationary employee. *See, e.g., Pl.Ex. 3.* at 3 (also labeled as page 9).

The Secretary moves for summary judgment on these claims. Garcia–Cabrera, however, notes in a footnote that he is not pursuing some of these claims, stating that they "are background to show that the acts of the Defendants on June 13–21 were based on discrimination and that the reasons alleged are pretext." *Response* at 37 n. 10. Accordingly, the court will not analyze them as separate claims.

## I. *Title VII Claims.*

The court must address a preliminary matter common to all of Garcia–Cabrera's Title VII claims. In each Count of his Complaint that alleges a Title VII violation, Garcia–Cabrera has sued the Secretary of the Department of Defense in his official capacity and several co-employees and supervisors in their individual capacities. The Defendants argue that the individually named Defendants, other than the Secretary, are not proper parties for the purposes of Title VII.

It is beyond doubt that a federal employee alleging violations of Title VII may sue only the head of the agency at issue in his or her official capacity and no one else. *See* 42 U.S.C. § 2000e–16(c) (granting federal employee right to file a judicial complaint in which "the head of the department, agency, or unit, as appropriate, shall be the defendant"); *Newbold v. United States Postal Service*, 614 F.2d 46, 47 (5th Cir.) (per curiam), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980) [8]; *see also Canino v. U.S.E.E.O.C.*, 707 F.2d 468, 472 (11th Cir.1983) (affirming dismissal of individual defendants sued under Title VII) *(citing Newbold,* 614 F.2d at 47). Thus, Title VII provides aggrieved federal employees no cause of action whatsoever against co-workers or supervisors for alleged employment discrimination. For this reason, Garcia–Cabrera's Title VII claims against the individual employees of the DeCA must fail.

This result comports with the general rule in the Eleventh Circuit, applicable to nonfederal employees, that a Title VII action will not lie against individual employees. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) ("Individual capacity suits under Title VII are . . . inappropriate"); *Cross v. State of Alabama Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir.1995) (affirming *Busby* holding post 1991 Title VII amendments).

For these reasons, the Defendants' Motion for Summary Judgment is due to be GRANTED in favor of Daleen Hulsey, Barbara Sannino, Beverley J. Montgomery, and Paul Orman Royal, the individual Defendants named in the Complaint, on all claims brought against them arising under Title VII (namely, Count I (discrimination) and Count II (retaliation)). Therefore, the only remaining Defendant for Garcia–Cabrera's Title VII claims is the Secretary, the titular head of the administrative agency at issue in this suit.

The court now turns to a discussion of the merits of the Title VII claims.

### 1. Discrimination Claims

Garcia–Cabrera alleges that the DeCA terminated him because of his race, his color, and his national origin in violation of Title VII.[9] All parties agree that there is

---

Given the sheer number of claims alleged by Garcia–Cabrera since his termination, the court thinks it prudent to point out that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) (citations omitted). Likewise, shotgun assertions of disparate facts cannot be used as a method of bootstrapping alternative theories of liability under any given cause of action unless the party so arguing specifically outlines how such facts relate to the claimed

violation of law. Garcia–Cabrera's Response is a textbook example of the confusion that occasions such distorted pleading, and, to the extent that he might be prejudiced by its effects, he must, and will, bear the brunt of its costs.

8. The Eleventh Circuit adopted as binding authority all decisions of the former Fifth circuit decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

9. In a passage from his Response that is illustrative of the confused manner in which this entire case has been presented, Garcia–Cabrera describes the nature of his discriminatory discharge claim as follows:

no direct evidence of discrimination and that Garcia–Cabrera must establish his case according to the now familiar burden shifting framework first described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir.1997). If the plaintiff meets this burden, then an inference arises that the challenged action was motivated by a discriminatory intent. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir.1989). The burden then shifts back to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. If the employer successfully articulates such a reason, then the inference of discrimination established by the prima facie case disappears, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and the burden shifts back to the plaintiff to show that the proffered reason is really a pretext for unlawful discrimination. *See Burdine*, 450 U.S. at 255–56, 101 S.Ct. 1089.

### a. Prima Facie Case

The elements that comprise a prima facie case of discriminatory discharge depend ultimately on the context in which the discrimination is alleged to have occurred, and, as a result, there is no single, univocal formulation that must be applied.

He [i.e., Garcia–Cabrera] is a member of a minority. Plaintiff is a member of a minority. As Plaintiff points out "I am not white". He is Hispanic which means that his National [sic] origin is different than a white American and he is a person of color, not a white person. Because of his National [sic] Origin [sic], he has a Spanish accent when using English, a[sic] attribute of his National [sic] Origin [sic] which Defendant knew at the time of hiring him.

*See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *see also, Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999) (recognizing that cases do not always fall into a "classic prima facie case formula" and that courts should focus on whether the evidence presents a situation that in the absence of any explanation is more likely than not discriminatory).

The parties in this case rely on two different formulations of a prima facie case of discriminatory discharge, both of which have been recognized by the Eleventh Circuit. The parties cite *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1525 (11th Cir.1991), which describes the most common formulation of a prima facie case in this context. In *Weaver* the court recognized that a plaintiff may establish a prima facie case of discriminatory discharge by showing: "(1) that he is a member of a protected minority, (2) that he was qualified for the job from which he was discharged, (3) that he was discharged, and (4) that his former position was filled by a non-minority." *Weaver*, 922 F.2d at 1525 (*quoting Jones v. Lumberjack Meats, Inc.*, 680 F.2d 98, 101 (11th Cir.1982)).

However, the *Weaver* type formulation is not the only acceptable formulation of a prima facie case. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984). For example, instead of showing that someone outside the protected class was hired for the plaintiff's position, the plaintiff can establish a prima facie case where he can show that he was "discharged for misconduct which was nearly identical to that engaged in by one outside of the protected class whom

*Response* at 38.

The court is willing to assume that Garcia–Cabrera asserts a claim for discrimination on theories of national origin, race, and color, all of which are categories protected by Title VII. *See* 42 U.S.C. § 2000e–2 ("It shall be an unlawful employment practice for an employer ... to discharge any individual ... because of [his] ... race, color, religion, sex, or national origin...").

the employer retained." *Hawkins v. Ceco Corp.*, 883 F.2d 977, 984 (11th Cir.1989); *see also, Lathem v. Dep't of Children and Youth Services*, 172 F.3d 786 (11th Cir. 1999) (applying *Hawkins* type formulation in a discriminatory discharge case).

In this case, both parties agree that Garcia–Cabrera meets the first three requirements of the prima facie case.[10] The only contested issue on summary judgement with respect to Garcia–Cabrera's prima facie case is whether he can satisfy the fourth element of a prima facie case. The briefs demonstrate a great deal of confusion over this issue, which results from the parties' reliance on alternative methods of proof. The Secretary relies only on the *Hawkins* prima facie case formulation and Garcia–Cabrera relies only on the *Weaver* prima facie case formulation. As a result, the arguments raised in the briefs are divergent and address distinct issues.

Following a *Hawkins* type formulation, the Secretary insists that a prima facie case of discriminatory discharge cannot be established unless Garcia–Cabrera can point to another DeCA probationary employee who was not a member of the protected class and who was not terminated despite having engaged in similar rude conduct. The Secretary ignores the possibility that the fourth element of Garcia–Cabrera's prima facie case can be established under a *Weaver* type formulation if Garcia–Cabrera can show that the person who filled his position was someone outside the protected class. In this case, it is not

disputed that Vicki Parsons ("Parsons"), a white female, replaced Garcia–Cabrera at the DeCA. *See Pl.Ex.* at 15.[11] Therefore, Garcia–Cabrera has established a prima facie case of discriminatory discharge.

### b. Legitimate Nondiscriminatory Reason

After a plaintiff has made out a prima facie case of race discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the challenged activity. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. The Secretary asserts that Garcia–Cabrera's documented rude behavior was the reason he was terminated.

At this point, it is unnecessary to discuss the voluminous evidence submitted to document the rude behavior. The burden facing a defendant at this stage of the litigation is exceedingly light—simply the burden of production or of going forward. Of course naked assertions are insufficient—in order to satisfy his burden, a defendant must adduce specific admissible evidence. *See Burdine*, 450 U.S. at 255, 101 S.Ct. 1089. The court finds that the defendant has met its burden of production, but at this time defers a discussion of the specific evidence so that it may be more clearly related to the plaintiff's arguments for pretext.

It is beyond question that an inability to get along with co-workers and demonstrated caustic or rude behavior is a

---

10. The Secretary clearly agrees that all of the first three elements of a prima facie case are satisfied. Garcia–Cabrera, however, engages in a great deal of shadow boxing over this issue, on the mistaken assumption that the Secretary disputes this fact. Garcia–Cabrera, for example, respond to an illusory assertion by the Secretary over the meaning of "color" under Title VII as follows: "It is extremely doubtful that Congress in 1964 had in mind when it included 'color' in Title VII, the Baldwin Theory of if you're light, you're right, if you're brown, stick around, but if you're black stay back." *Response* at 38. Garcia–Cabrera then goes on to describe his own definition of color.

The court will not pause over these arguments made by Garcia–Cabrera because they are outside the scope of any contested issue and do not appear to have any bearing on the case.

11. This assertion is uncontested by the Secretary, who, as noted, has failed to address a *Weaver* type prima facie case. Instead, proceeding on the assumption that the fourth element of the prima facie case was a *Hawkins* type element, the Secretary argues that Parsons is an insufficient comparator because she is not a probationary employee. *See Def. Ex.* 20 (Declaration of Gladys Reed).

legitimate, non-discriminatory reason for an employment decision. *See, e.g., McNairn v. Sullivan,* 929 F.2d 974, 978 (4th Cir.1991); *Blake v. J.C. Penney & Co.,* 894 F.2d 274, 278 (8th Cir.1990); *Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Jones v. Lumberjack Meats, Inc.,* 680 F.2d 98, 101 (11th Cir. 1982).

#### c. Pretext

The burden now shifts back to the plaintiff to show that the proffered reason is really a pretext for unlawful discrimination. *See Burdine,* 450 U.S. at 255–56, 101 S.Ct. 1089. At this stage of the analysis, the plaintiff's burden of showing pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. 1089.

■ A plaintiff may show that an employer's proffered legitimate reason for the discharge is a pretext for unlawful discrimination by adducing enough evidence to permit the jury to reasonably disbelieve the proffer—that is, by attacking the proffer directly, or by pointing to other evidence, including evidence previously used to establish his prima facie case, that shows that the real reason for the employer's action was discrimination. *Id.; see also Ross v. Rhodes Furniture, Inc.,* 146 F.3d 1286, 1291 (11th Cir.1998); *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir.1997). In this case, Garcia–Cabrera attempts to show pretext by directly attacking the truthfulness of the proffer.

#### 1. *Falsity of Proffer*

■ Garcia–Cabrera attempts to rebut the proffered reason by showing that the relevant decisionmaker's explanation was not the real reason for his termination. Proving this sort of pretext requires a

showing of something "more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (America), Inc.,* 77 F.3d 914, 919 (7th Cir.1996).

In this case, it is undisputed that Hulsey was the ultimate decisionmaker; she alone decided to terminate Garcia–Cabrera and there is no evidence that anyone else suggested or recommended that he be terminated. Her decision was based on the following facts:

When Garcia–Cabrera first received his career-conditional appointment at the DeCA, Kathy Morrow ("Morrow") was his first-line supervisor. She was responsible for evaluating Garcia–Cabrera's performance during the relevant time period and gave him very positive recommendations, but she noted that he "needs to be mindful of his interpersonal communication skills." [12] *See Def.Ex. 7.* Sometime in May 1997, Spangler replaced Morrow as Garcia–Cabrera's first line supervisor. On June 11, 1997, Spangler, who was Garcia–Cabrera's first-line supervisor at the time, reported the Spangler Incident to Hulsey. Two days after being informed of the Spangler Incident, Hulsey received a call from Sannino, the Commissary Officer at Maxwell, who recounted certain instances of rude behavior by Garcia–Cabrera. Based upon the two instances of documented rude behavior, Hulsey made the decision to terminate Garcia–Cabrera.

Garcia–Cabrera has presented various evidence in support of his argument for pretext. Much of the evidence, when viewed in a light most favorable to Garcia–Cabrera, tends to create an issue of fact as to whether he was in fact rude or discourteous to anyone while at the DeCA. Specifically, he contests the factual bases of the reports given Spangler and Saninno. *See Response* at 44 (the perceived brusque manner was in reality his difficulty with English). This sort of evidence is irrelevant. *See, e.g., Hawkins,* 883 F.2d at 980

---

**12.** Plaintiff asserts that Morrow is referring to his quiet nature and not any rude behavior.

*See Pl.Ex.* 10 at 2.(Morrow Affidavit) (confirming this understanding of her evaluation).

n. 2 (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done so).

■ In order to show pretext by challenging the veracity of the proffer, Garcia–Cabrera must show evidence that creates a triable issue of fact as to the veracity of Hulsey's proffered explanation. The reasonableness of the decision maker's belief is not at issue in employment suits, and so, the question of whether an employer's honest belief has a basis in fact is not a proper question to be considered on summary judgment. Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [employment laws] do[ ] not interfere. Rather, [the] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck, & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (*quoting Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted)).

■ The closest that Garcia–Cabrera comes to disputing the honesty of the proffered explanation given by Hulsey is to accuse Spangler of intentionally misinforming Hulsey that Garcia–Cabrera had been rude. The facts underlying this charge of fabrication are as follows:

According to Donna Myles ("Myles"), the lead account technician at the DeCA, and Garcia–Cabrera, the events unfolded as follows:

On June 10, 1997, Parsons, one of Garcia–Cabrera's co-workers and his eventual replacement, had been crying at her desk when she heard someone mocking her by "sniffling." Parsons went to Spangler's office and accused Myles of mocking and laughing at her. *See Pl.Ex. 1* at 13 (Myles Affidavit). Myles denied the accusation. Spangler then called Garcia–Cabrera into her office and accused him of mocking Parsons. According to Parsons and Garcia–Cabrera, Garcia–Cabrera admitted to having made sniffling sounds and immediately apologized to Parsons. No one witnessed any rude behavior by Garcia–Cabrera during the June 10; 1997 events.

On June 11, 1997, Myles stopped by Spangler's office to inform her that a co-worker was absent from work that morning. Spangler began questioning Myles about a rumor going around the office that Garcia–Cabrera did not like Spangler. Myles suggested that Spangler question Garcia–Cabrera about the rumor. Spangler then called Garcia–Cabrera into her office to discuss the rumor with him. Garcia–Cabrera's version of events is as follows:

When I came to the office, Ms. Spangler asked me if I liked her. I replied that I was there to work and not to like or dislike anyone. I felt uncomfortable about the question because of her previous jokes and laughing. Ms. Spangler asked me if I thought she was unfair to me. I replied no. She then started telling me about what she had heard that I said something bad about her. I stated that I was here to work from 8 to 5 and was not here to discuss gossip. I informed Ms. Spangler that if someone had told her something I had said wrong that she should bring in the person who told her and we should go to Ms. Hulsey's office. Ms. Spangler stated she would not go to Ms. Hulsey's office or being the person in or even tell me who it was. She told me to leave but that she would be watching me. I asked her what she meant and she said again that she would be watching me. I informed Ms. Spangler that if she is going to harass me, I would contact my attorney. At no time did I yell.

*Pl.Ex. 2* (Affidavit of Garcia–Cabrera) at 12–13.

Spangler's version of the events is somewhat different:

On or about June 11, 1997, I called Mr. Garcia into my office to discuss a situation that occurred between him and Ms. Parsons that resulted in Ms. Parsons coming into my office crying. I asked Mr. Garcia if I had ever treated him unfairly, or was rude or mean to him to which he replied "no." Turning then to things that I understood he had stated, I told him that "I had heard ...". [sic] Before I could finish my statement, Mr. Garcia stated "Shit, I don't want to hear that. If someone else tells you something you need to get them in here so we can talk face to face." I told Mr. Garcia that it was not necessary to do that. Mr. Garcia then told me that if I called him into my office again without bringing in the third person, he was going to see his lawyer and sue me for harassment.

*Def.Ex. 19.* at 1–2.

These events are thus disputed. Spangler describes the incident as an instance of rude behavior, while Garcia–Cabrera describes the incident as an instance of harassment.

██ The rule is that when a plaintiff has created an issue of fact as to the veracity of the employer's stated explanation for the challenged employment action, he is entitled to survive summary judgment. *See Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 964 (11th Cir.1997) (*citing Combs,* 106 F.3d at 1530). There is clearly an issue regarding the truthfulness of Spangler's account of Garcia–Cabrera's behavior. There is, however, no issue of fact as to Hulsey's stated reason for terminating Garcia–Cabrera.

The Secretary argues that in order to attack the honesty of the employer's proffered reason, Garcia–Cabrera must show that Hulsey, the ultimate decision maker, did not in fact believe that Garcia–Cabrera had been rude. Implicitly, the Secretary suggests that it is Hulsey's good faith and reasonable reliance on Spangler's report, even if Spangler had lied in that report,

and not any taint of Spangler's possible animus, that is at issue.

The Eleventh Circuit has clearly established in an analogous ADEA case that evidence showing a false factual predicate underlying the employer's proffered reason does not prove that the employer did not rely on the reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information. *Elrod,* 939 F.2d at 1470 ("We can assume for purposes of this opinion that the complaining employees ... were lying through their teeth. The inquiry ... is limited to whether [the decisionmaker] believed that [the plaintiff] was guilty of the alleged [misconduct], and if so, whether this belief was the reason behind [the plaintiff's discharge]"). It is obviously not a violation of federal employment discrimination laws for an employer to err in assessing the performance of an employee. *See Moore v. Sears, Roebuck and Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir.1982).

The only question before the court then, is whether Garcia–Cabrera has presented any evidence from which a reasonable jury could infer that Hulsey's reliance on the reports of discourtesy was not the real reason she terminated the plaintiff. Garcia–Cabrera offers no such evidence, and hence fails to show that the proffered reason is false.

Accordingly, summary judgment is due to be GRANTED in favor of the Secretary on Garcia–Cabrera's claim that he was discharged because of his race.

### 2. *Retaliation*

Section 704(a) of the Civil Rights Act makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by ... [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

under this subchapter." 42 U.S.C. § 2000e–3(a). In Count II of his Complaint, Garcia–Cabrera alleges that he has been retaliated against in violation of this section because of his protected employment activity.

Garcia–Cabrera identifies three instances of alleged retaliation, all of which arise out of the EEO Complaint procedure and administrative process following his termination. In two of the instances, which are closely related, Garcia–Cabrera complains that several of his co-workers and supervisors sought reprisal against him by lying during the EEO process and that one of his supervisors threatened workers at the DeCA in an effort to prevent them from testifying in Garcia–Cabrera's favor. In the third allegation of retaliation, Garcia–Cabrera alleges that a co-worker, Donna Myles ("Myles") was retaliated against for participating in Garcia–Cabrera's discrimination Complaint. Because they involve application of distinct legal rules, the court will consider the allegations of retaliation against Garcia–Cabrera and Myles separately.

### a. *Retaliation Against Garcia–Cabrera.*

According to Garcia–Cabrera, there are two alleged instances of alleged retaliation against him:

### 1. *Burgess's Alleged Retaliation.*

■ The first alleged instance of retaliation relates to testimony given during the EEO process by Jimmie Burgess ("Bur-

gess"), the director of personnel and training at the DeCA, Maxwell. A few days after receiving his termination letter, Garcia–Cabrera returned to the DeCA and asked Burgess for copies of documents relevant to his termination. During the EEO process, Burgess apparently testified that Garcia–Cabrera was "aggressive, belligerent, hostile, and loud" at that meeting. *See Pl.Ex. 3* at 5 (also labeled as Page 11) (EEO Final Report). Garcia–Cabrera alleges that this testimony was retaliatory and "was false and meant to discredit Plaintiff." *Pl.Resp.* at 55; *see also, Pl.Ex. 2* at 14 (Affidavit of Garcia–Cabrera) ("I was at all time [sic] respectful and polite to Mr. Burgess"). These disputed facts form the basis of Garcia–Cabrera's first retaliation claim.[13]

■ It is well settled that a former employee, like Garcia–Cabrera, is an "employee" for the purposes of § 704(a). *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("former employees are within § 704(a)'s coverage"). This conclusion follows from the recognition that former employees are by no means beyond the reach of a former employer who wishes to stifle their complaints. *See id.* at 346, 117 S.Ct. 843.

■ In order to be actionable under section 704(a), however, post-termination activity by a former employer must somehow adversely affect the former employee's terms and conditions of employment. *See, e.g., Nelson v. Upsala College,* 51 F.3d 383, 388 (3d Cir.1995) (former employee's

---

**13.** Garcia–Cabrera also may be alleging an additional claim that Burgess lied in other ways during the EEO process. In his Response, Garcia–Cabrera asserts that "Mr. Burgess stated that it was twice that Plaintiff had come and that he was rude and belligerent both times to the EEO Counselor." *Response* at 55. It is unclear whether Garcia–Cabrera contests that there was a second meeting or whether he contests that he was rude to Burgess at the second meeting. Burgess did apparently testify to the EEO officer at Maxwell that there were two post-termination confrontations with Garcia–Cabrera

and that Garcia–Cabrera was rude or hostile during both of them. *See Pl.Ex. 3* at 5 (also labeled as Page 11) (EEO Final Report).

These claims are identical to the claim described in the body of the court's opinion (i.e., that Burgess lied during the EEO process) and, hence, would be analyzed in the identical manner as the claim discussed in the court's opinion. Accordingly, to the extent that Garcia–Cabrera alleges these additional claims of retaliation, the court finds that they too would not survive summary judgment for the identical reasons outlined below.

retaliation claim must relate to the terms and conditions of his employment); *Charlton v. Paramus Bd. of Education,* 25 F.3d 194, 200 (3d Cir.1994) (recognizing that post-termination retaliation claim cognizable "where the retaliation results in discharge from a later job, a refusal to hire the plaintiff, or other professional or occupational harm"), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994); *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 891 (7th Cir.1996), ("former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment . . ." may sue under section 704(a)); *Reed v. Shepard,* 939 F.2d 484, 493 (7th Cir.1991) (excluding "from the realm of actionable retaliation claims those post-termination acts which are unrelated to the plaintiff's employment"); *Murphy v. Village of Hoffman Estates,* 959 F.Supp. 901, 907 (N.D.Ill.1997) (holding "that an employer's posttermination conduct must bear some nexus to the plaintiff's employment or efforts to secure future employment to be actionable retaliation").

Thus, a former employee, like a current employee, must have suffered an "adverse employment action" that relates to the terms and conditions of his employment, in order to state a cognizable retaliation claim. It has often been noted that section 704(a) does not proscribe all adverse actions but, instead, makes illegal only those retaliatory acts that adversely affect a term or condition of employment—that is, the complaining employee must have suffered an "adverse employment action." *Wu v. Thomas,* 996 F.2d 271, 274 (11th Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994).

In this case, Garcia–Cabrera nowhere describes how the alleged retaliation by Burgess relates to his past, current, or future employment. It is, of course, not the court's job to hypothesize how the facts as alleged by Garcia–Cabrera relate

to the claimed ·violation of law.[14] To the extent that Garcia–Cabrera is alleging that lying by a former employer during an EEO Complaint process is, *ipso facto,* a cognizable claim under section 704(a), this court agrees with the reasoning of our sister district court in *Boyd v. Brookstone Corp. of New Hampshire, Inc.,* 857 F.Supp. 1568 (S.D.Fla.1994). In that case, the court held that alleged submission to the EEOC of false evidence did not constitute a claim of retaliation under section 704(a) because such allegations affect only "an administrative proceeding," not any term or condition of employment. *Id.* at 1573; and *see; Malladi v. Brown,* 987 F.Supp. 893, 918 (M.D.Ala.1997) (Thompson, J.) (*citing Boyd* with approval). This court agrees with that decision and the reasoning stated therein and holds that such activity does not affect any term and condition of employment and, hence, is not actionable under section 704(a).

For these reasons, summary judgment is due to be GRANTED on Garcia–Cabrera's retaliation claim with respect to Burgess' alleged false testimony during the EEO investigation.

### 2. *Hulsey's Alleged Retaliation.*

■ The second instances of retaliation alleged by Garcia–Cabrera is as follows:

After the report of the EEO Counselor was submitted on August 20, 1998 along with the formal Complaint statement [sic] and in October of 1997, Defendant Hulsey had a meeting of the employees and stated that their positions depended on their statements to Investigators or words to that effect.

All said statements were done to discredit Plaintiff and [sic] discriminate against him in the EEO proceedings and the DOD investigative procedure pertaining to his Title VII claims.

*Pl.Resp.* at 55.

This allegation is unsupported by *any* citation to *any* relevant evidence. To sur-

14. *See supra,* note 1277–78.

vive summary judgment, Garcia–Cabrera must produce *at least* some evidence (any evidence) to support his claim. Garcia–Cabrera may not rest on bare and unsupported allegations. This rule is outlined in Rule 56(c) of the Federal Rules of Civil Procedure and is part of the well settled law of this circuit. *See Fed.R.Civ.Proc. 56(c); see also Peppers v. Coates,* 887 F.2d 1493 (11th Cir.1989) ("If the party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor") (*citing Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982)). Therefore, because Garcia–Cabrera has failed to cite the court to any evidence in support of this retaliation claim, the court must assume that no evidence exists. Accordingly, even if actions taken in regard to EEO proceedings could be considered as actionable under section 704(a), summary judgment still must be GRANTED in favor of the Secretary as to Garcia–Cabrera's claim that Hulsey threatened other employees in an attempt to stifle his discrimination Complaint.

#### b. *Retaliation Against Donna Myles*

Garcia–Cabrera also alleges a further retaliation claim as follows:

> The main witness on Plaintiff's behalf [at the EEO proceedings] was the lead accounting technician, Donna Myles. On June 2, 1997, Ms. Myles testified favorably in [sic] Plaintiff's behalf. On July 16, 1997, Ms. Hulsey brought similar charges against her as to discourtesy against Ms. Spangler.

*Pl.Resp.* at 55.

The court need not pause over this meritless claim. It is axiomatic that a plaintiff can invoke a court's jurisdiction only where he has suffered some harm, or is threatened with some harm, from the putatively illegal action at issue. The doctrine of standing, as it has been developed by the courts, describes the circumstances under which a plaintiff is said to have a sufficient personal stake in the outcome of a lawsuit to call upon the court to adjudicate the issues raised therein, and the general rule is that a person does not have standing to seek redress for another's wrong. *See Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

There are cases that have recognized limited third party standing to sue under section 704(a) where an employer retaliates against third persons, e.g., spouses or friends, and not the employee who actually complained of discrimination. For example, one court allowed a woman, who had not personally opposed any employment practice, to proceed under section 704(a) where she suffered an adverse employment action in retaliation for her husband's discrimination complaint. *See De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978). Such third party reprisals are actionable in some circuits. *Compare Holt v. JTM Indus., Inc.,* 89 F.3d 1224 (5th Cir.1996) (rejecting standing for third party reprisal) *with EEOC v. Ohio Edison Co.,* 7 F.3d 541 (6th Cir.1993) (recognizing standing for third party reprisal).

These cases, however, are inapposite to Garcia–Cabrera's claim that Myles was retaliated against. In this case, Garcia–Cabrera has brought a claim on behalf of a third party who suffered alleged retaliation for her own protected activity, not for the protected activity of Garcia–Cabrera. It is beyond doubt that he does not have standing to bring this claim.

For these reasons, summary judgment is due to be GRANTED in favor of the Secretary on Garcia–Cabrera's claim that Myles was retaliated against because of her protected activity.

### II. *Bivens Claim*

The court now turns to Garcia–Cabrera's claim that his First Amendment rights have been violated by the actions of his supervisors.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court authorized a constitutionally implied damages action against individual federal officials for infringement of Fourth Amendment rights that is comparable in form to the Congressionally authorized action against state officials under 42 U.S.C. § 1983. The Court has subsequently expanded a *Bivens* action to include other constitutional rights. *See, e.g., Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eight Amendment); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment Due Process Clause).

■ In this cause, Garcia–Cabrera brings a *Bivens* action against his supervisors in their individual capacity for alleged violations of his First Amendment rights. It is unclear exactly what Garcia–Cabrera means when he says that his First Amendment rights have been violated. In the relevant portion of his Response, Garcia–Cabrera describes his claim as follows:

> "In this case, after his [i.e., Garcia–Cabrera's] termination on June 13, 1997, Defendants Montgomery, Sannino, Hulsey, and Royal, acting under color of law began collected [sic] memos to justify the termination of Plaintiff by discrediting Plaintiff and his witness and intimidated [sic] his witness [sic] by telling them that theirs [sic] continued employment depended on what they said to investigators and in one instance disciplined one of Plaintiff's key witnesses on a trumped up charge after she gave a favorable statement to the EEO counselor. In addition, the father of Ms. Parsons' friend, Ms. Avery, made false allegations against Plaintiff that he was rude and Overly [sic] emotional when Plaintiff cane [sic] to his office a short [sic] after his termination."

*Response* at 33.

It is unnecessary for the court to divine the factual bases of Garcia–Cabrera's *Bi-*

*vens* claims from the quoted passage. The court finds that assuming, *arguendo*, Garcia–Cabrera's First Amendment rights were violated by the individually named defendants, as alleged, Garcia–Cabrera would, as a matter of law, have no *Bivens* remedy.

In *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court rejected a *Bivens* claim of a non-probationary federal employee who sought to challenge his demotion on the ground that it was a reprisal for constitutionally protected activity. The Court held that the presence of a Congressionally established, comprehensive regulatory scheme of civil service remedies that governs federal employer-employee relationships was a "special factor [ ] counseling hesitation" in implying a *Bivens* remedy. *Id.* at 378, 103 S.Ct. 2404; *cf. Bivens*, 403 U.S. at 396, 91 S.Ct. 1999 (holding that courts should be wary of implying a *Bivens* remedy where there were special factors counseling hesitation). The Court concluded that, in light of the "elaborate remedial system" constructed by Congress, *Bush*, 462 U.S. at 388, 103 S.Ct. 2404, it should not add a *Bivens* remedy to those provided by Congress in the exercise of its legislative judgment. *Id.* at 390, 91 S.Ct. 1999.

It is, therefore, clear that if Garcia–Cabrera were a career employee in the civil service, the holding in *Bush* would preclude his *Bivens* claim because he would have adequate other remedies. The holding in *Bush* is, however, potentially distinguishable from the case sub judice because probationary employees, like Garcia–Cabrera, generally may not avail themselves of the civil service remedies afforded to career employees under the Civil Service Reform Act of 1978 ("CSRA") (codified and amended in scattered sections of 5 U.S.C.).[15] Accordingly, one might argue

---

15. As noted, an employee serving a probationary period is not an "employee" under 5

U.S.C. § 7511(a)(1)(A) and, as such, is not protected by the elaborate civil service reme-

that because the remedies available to probationary employees in the civil service do not address allegations of constitutional violations by their superiors, courts should imply a *Bivens* action to fill the gap in the statutory scheme.

Some cases followed this reasoning and, post-*Bush*, allowed probationary civil service employees to seek recovery under *Bivens* for alleged constitutional violations on the theory that probationary employees had no other adequate remedies. *See, e.g., Harris v. Moyer*, 620 F.Supp. 1262 (N.D.Ill.1985) (*Bush* not applicable to defeat *Bivens* action by probationary employee, because employee had no statutory right of appeal to Merit System Protection Board). One such case is particularly instructive.

In *Kotarski v. Cooper*, 799 F.2d 1342 (9th Cir.1986), *judgment vacated* 487 U.S. 1212, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988), and, *on remand* 866 F.2d 311 (9th Cir.1989), the Ninth Circuit held that probationary civil service employees had no "meaningful" civil service remedy for violations of their constitutional rights and, therefore, a *Bivens* action was appropriate. The Supreme Court, however, vacated the judgment of the Ninth Circuit and remanded the case to be decided in light of *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). *See Kotarski*, 487 U.S. at 1212, 108 S.Ct. 2861.

In *Chilicky*, the Supreme Court underscored that the Congressionally provided remedy at issue need not be meaningful from the perspective of the aggrieved employee in order to preclude a *Bivens* action, and, so long as Congress' failure to provide money damages, or other significant relief, was not merely an inadvertent oversight, courts should defer to the judgment of Congress. *See Chilicky*, 487 U.S. at 426, 108 S.Ct. 2460. The Court noted that "the presence of alleged unconstitu-

tional conduct that is not *separately* remedied under the statutory scheme [does not] imply that the statute has provided 'no remedy' for the constitutional wrong at issue." *Id.* at 427–28, 108 S.Ct. 2460 (emphasis in original).

On remand, the *Kotarski* panel reversed its prior judgment, noting that probationary civil service employees have *some*, albeit limited, civil service remedies and, therefore, were precluded as a matter of law from seeking the requested *Bivens* relief: "Because Congress provided some mechanism [to probationary employees] for appealing adverse personnel actions, it cannot be said that the failure to provide damages, or complete relief, was 'inadvertent.' As a result this court cannot imply a *Bivens* remedy. To do so would improperly disregard the rationale of *Chilicky*." *Kotarski*, 866 F.2d at 312 (*citing McIntosh v. Turner*, 861 F.2d 524 (8th Cir.1988); *Spagnola v. Mathis*, 859 F.2d 223 (D.C.Cir.1988) (both holding same)). Other courts have likewise held that the *Bush* holding extends to probationary civil service employees because available civil service remedies preclude probationary employees from pursuing a *Bivens* remedy. *See, e.g., Saul v. United States*, 928 F.2d 829 (9th Cir.1991); *Volk v. Hobson*, 866 F.2d 1398 (Fed.Cir.), *cert. denied*, 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989); *Feit v. Ward*, 886 F.2d 848 (7th Cir.1989); *Swartz v. Internal Revenue Service*, 884 F.2d 1128 (8th Cir.1989);. *Lombardi v. Small Business Administration*, 889 F.2d 959 (10th Cir.1989); *Brothers v. Custis*, 886 F.2d 1282 (10th Cir. 1989); *McIntosh v. Turner*, 861 F.2d 524 (8th Cir.1988).

Any doubt about the application of this precedent in this Circuit was recently removed by *Lee v. Hughes*, 145 F.3d 1272 (11th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1026, 143 L.Ed.2d 37 (1999). In

dies established by Congress. The Office of Personnel Management regulations provide a narrow exception to the non-reviewability of termination during the probationary period.

The MSPB may entertain such an appeal where the employee alleges the termination "was based on partisan political reasons or marital status." 5 C.F.R. § 315.806(b).

that case, the court was faced with a *Bivens* action brought by a former probation officer in connection with his discrimination complaint. *Id.* at 1272. Like Garcia–Cabrera the plaintiff in *Hughes* argued that he should be allowed to pursue a *Bivens* action because the available civil service remedies did not address allegations of constitutional violations by his supervisors. *Id.* The court rejected this argument. The court found that "the CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights." *Id.* at 1276–77 (*quoting Saul,* 928 F.2d at 840).[16] Accordingly, the Eleventh Circuit held that "the CSRA precludes a *Bivens* remedy ... notwithstanding the fact that the CSRA does not provide administrative or judicial review of the adverse personnel action." *Id.* at 1275.

Based on the foregoing, it is clear that Garcia–Cabrera may not, as a matter of law, pursue his *Bivens* claim. Accordingly, summary judgment is due to be GRANTED in favor of Daleen Hulsey, Barbara Sannino, Beverley J. Montgomery, and Paul Orman Royal, the individual Defendants named in the Complaint, with respect to Garcia–Cabrera's *Bivens* claims.

## V. CONCLUSION

For the reasons discussed above, summary judgment is due to be GRANTED in favor of all Defendants and against Garcia–Cabrera on all counts of the Complaint.

---

16. In *Saul,* the Ninth Circuit followed *Kotarski. See, Saul,* 928 F.2d at 840.